## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUBREY MARKSON, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>TURTLE BAY TAVERN CORP, a New York corporation, and 978 SECOND PUB INC., a New York corporation,<br><br>            Defendants. | Case No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.     Plaintiff Aubrey Markson ("Markson" or "Plaintiff") brings this Class Action Complaint against Defendants Turtle Bay Tavern Corp ("Turtle Bay") and 978 Second Pub Inc. ("978 Second Pub" or "Irish Exit") (and together with Turtle Bay, "Defendants"), to stop Defendants' practice of sending unsolicited text messages to consumer's cellular telephones, and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff Markson, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information

and belief, including investigation conducted by her attorneys.

## PARTIES

2.      Plaintiff Markson is a natural person and resident of the State of Colorado. Plaintiff resides in Arapahoe County, Colorado.

3.      Defendant Turtle Bay is a corporation incorporated and existing under the laws of the State of New York. Turtle Bay does business in the State of New York and in this District—specifically, it owns, operates, and/or manages the Turtle Bay Tavern located at 987 2nd Ave, New York, NY, 10022. It also sends text messages to consumers in this District.

4.      Defendant 978 Second Pub is a corporation incorporated and existing under the laws of the State of New York. 978 Second Pub does business in the State of New York and in this District—specifically, it owns, operates, and/or manages the Irish Exit located at 978 Second Avenue, New York, New York, 10022. It also sends text messages to consumers in this District.

## JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") a federal statute.

6.      The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants are registered to do business in the State

2

of New York, regularly conduct business in the State of New York and in this

District, and a substantial part of the events giving rise to the claims asserted here

occurred in this District.

**COMMON ALLEGATIONS OF FACT**

**<u>Bulk SMS Marketing</u>**

7.     In recent years, marketers who have felt stymied by federal laws

limiting solicitation by telephone, fax machine, and e-mail have increasingly

looked to alternative technologies through which to send bulk messages cheaply.

8.     Text messages, like the ones sent in the instant action, are considered

calls under the TCPA. *See Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18

FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon &*

*Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a

form of communication used primarily between telephones and is therefore

consistent with the definition of a "call").

9.     As explained by the Federal Communications Commission ("FCC")

in its 2012 order, the TCPA requires "*prior express written consent for all*

autodialed or prerecorded telemarketing calls to wireless numbers and residential

lines." *In the Matter of Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830

¶ 2 (Feb. 15, 2012).

10.     Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

11.     When an SMS message call is successfully made, the recipient's cellular telephone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

12.     Third parties, such as CallFire Inc.,[1] provide and implement interactive text messaging promotions for businesses, including for Defendants.

13.     CallFire's Club Texting business uses the short code "25827" in the United States.[2] Indeed, CallFire specifically markets the 25827 short code for use

---

[1] CallFire acquired the assets of Club Texting, Inc. ("Club Texting") in 2012. Club Texting was a corporation organized and existing under the laws of the State of New York until it was voluntarily dissolved in October 2014. CallFire continues to do business under its own name as well as under the name of Club Texting and other aliases.
[2] On information and belief, CallFire uses different short codes for different business lines. CallFire's "EZ Texting" business uses the short code "313131," for example.

by clubs, restaurants, and other entertainment venues.[3]

14.     Defendant Turtle Bay uses the 25827 short code. Defendant Irish Exit also uses the 25827 short code.[4]

15.     Pursuant to the TCPA, a company must obtain consent before sending automated SMS text messages, the text messaging service component of cellular telephones, to a cellular telephone. *See* 47 U.S.C. § 227, *et seq*. In many instances, Defendants' SMS text messages sent to consumers' cellular telephones violate the TCPA because: (1) the telephone owner did not consent to receiving the SMS text messages; and/or (2) the current cellular telephone owner has expressly requested not to receive such text messages.

**<u>Defendants Transmit Text Messages to Consumers Who Do Not Want Them</u>**

16.     Businesses such as Defendants have been utilizing SMS marketing solutions for a decade.

17.     Defendant Turtle Bay owns, operates, and/or manages a restaurant and bar in New York, New York, known commonly as Turtle Bay Tavern.

18.     Defendant 978 Second Pub owns, operates, and/or manages a

---

[3] *See* https://www.nightlifetexting.com/ ("Send mass text messages to your customers, lure them to your venue for a night to remember, and grow your fan base at the click of a button.")

[4] Scores of businesses throughout the United States use the "25827" short code. *See e.g.* Shelby Lanes - http://www.shelbylanes.net/Contact-Us/Text-Club; Skitzo Fonik - http://skitzofonik.com/home/blog/text-dance-to-25827-to-win-prizes; Knuckleheads Tobacco - http://knuckleheadstobacco.com/special-deals; Delphos Soccer Association - http://www.delphossoccer.org/about-the-team/clubtexting ; Cooperstown Dreams Park - http://www.cooperstowndreamspark.com/CDP/Messaging_Landing.html; TruTEMPS Staffing - http://www.trutemps.com/text-alerts/

restaurant and bar in New York, New York, known commonly as the Irish Exit.

19.     For Turtle Bay and the Irish Exit to recruit consumers to attend their nightclubs and events, Turtle Bay and the Irish Exit have resorted to sending text messages to consumers who have not consented to them.

20.     In sending these promotional text messages, Defendants took no steps to acquire the oral or written prior express consent of Plaintiff or the Classes of people who received the unsolicited text messages.

21.     Defendants made, or had made on their behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

22.     In sending the text messages at issue in this Complaint, Turtle Bay and the Irish Exit utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Turtle Bay and the Irish Exit (through their agent(s)) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendants' automated dialing equipment includes features substantially similar to a predictive dialer inasmuch as it has the latent capacity to make numerous text message calls simultaneously (without human intervention).

23.     Turtle Bay and the Irish Exit were and are aware that these above

described text messages were and are being made without the prior express written consent of the text message recipients.

## FACTS SPECIFIC TO PLAINTIFF MARKSON

24.    On January 18, 2006, Plaintiff's cellular telephone number was placed on the National Do Not Call Registry.

25.    Starting several years ago, Plaintiff Markson began receiving unsolicited commercial text messages from Defendants.

26.    As an illustrative example (and not one of limitation), On April 14, 2016 Plaintiff Markson received a text message from short code 25827 which read "Ladies Night @ Turtle Bay (52&2). $4 Wine/champagne for LADIES 5-10p. We are extending Happy Hour 6-10pm! Show this 4 1/2 off drinks, apps, &shots! Reply X to end"

27.    After receiving the April 14, 2016 text message, Plaintiff Markson replied "X" per the opt-out instructions contained in Defendants' text message.

28.    On April 16, 2016, after having attempted to opt-out of Defendants' text messaging, Plaintiff Markson received another text message from short code 25827 which read "Happy Day Drinking Season! The whole bar is 1/2 off at The Irish Exit today from 4-9pm. Come for a drink, get a great price, & start your night early :)"

29.    The below screenshot taken from Plaintiff's cellular telephone

displays the April 14, 2016 and April 16, 2016 text messages:



30.     The texts were clearly made for a commercial purpose since Turtle Bay and the Irish Exit's businesses relies on food, drink, and entertainment sales to their entrants. It was plainly telemarketing.

31.     Markson never consented either orally or in writing to receive text messages from Defendants. Markson was never presented with consent language indicating that she was agreeing to receive text messages on her cellular telephone with the use of an ATDS. Likewise, she was never provided any consent disclosure indicating that providing her consent to receive text messages was not a condition of any sale. Furthermore, Markson has never even visited Turtle Bay or the Irish Exit's establishments and lives in another state, more than 1,700 miles away from

both bars.

32.    Markson has been receiving unsolicited text messages from Turtle Bay promoting Turtle Bay for years.

33.    When Markson first started receiving these promotional text messages, she replied back to the texts that she was not interested, to stop the texts, and to opt her out of any more texts. Upon information and belief, Plaintiff estimates that she sent at least 5 opt out or stop requests to Defendants over the years.

34.    At no time did Plaintiff Markson consent to the receipt of text message calls from Defendants, let alone provide her prior oral or written express consent to Defendants.

35.    By making unauthorized text message calls as alleged herein, Defendants have caused consumers actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendants also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating

cellular data and minutes.

36.     In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cellular telephones.

37.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

> **Autodialed No Consent Turtle Bay Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Turtle Bay (or a third person acting on behalf of Turtle Bay) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Turtle Bay claims it obtained prior express written consent in the same manner as Turtle Bay claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Autodialed No Consent Irish Exit Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Irish Exit (or a third person acting on behalf of Irish Exit) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Irish Exit claims it obtained prior express written consent in the same manner as Irish Exit claims it supposedly obtained prior express written consent to send automated

text messages to the Plaintiff.

39.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants' or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

40.     On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

41.     There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes members' that may be answered in a single stroke include but are not limited to the following:

      a.     whether Defendants' conduct constitutes a violation of the TCPA;

      b.     whether Defendants' utilized an ATDS dialing system to send

text messages to members of the Classes;

       c.    whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct;

       d.    whether Defendants obtained prior express written consent to contact any class members;

       e.    whether Defendants' text messages constitute telemarketing;

       f.    to the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members; and

       g.    whether Defendants should be enjoined from such conduct in the future.

    42.    The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellular telephones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Classes, received unsolicited spam text message calls from Defendants. Plaintiff is advancing the same claims and legal theory on behalf of

herself and all absent members of the Classes.

43.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

44.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, and/or have refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendants to discontinue sending unsolicited and unauthorized spam text messages to the public and to honor their opt-out requests. Likewise, Defendants have acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

45.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendants. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy

of scale, and comprehensive supervision by a single court.

46.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendants'Tr records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq.*)**
**(On behalf of Plaintiff and the Autodialed No Consent Turtle Bay Class)**

47.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.     Defendant Turtle Bay sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Turtle Bay Class without first obtaining prior express written consent to receive such calls.

49.     Defendant Turtle Bay sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant Turtle Bay, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant Turtle Bay's autodialer disseminated information *en masse* to Plaintiff and other

consumers.

50.     By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Turtle Bay Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant Turtle Bay violated 47 U.S.C. § 227(b)(1)(A)(iii).

51.     Defendant Turtle Bay has therefore violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant Turtle Bay's conduct, Plaintiff and the other members of the Autodialed No Consent Turtle Bay Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52.     In the event that the Court determines that Defendant Turtle Bay's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Turtle Bay Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq*.)**
**(On behalf of Plaintiff and the Autodialed No Consent Irish Exit Class)**

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     Defendant Irish Exit sent autodialed text messages to cellular

telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Irish Exit Class without first obtaining prior express written consent to receive such calls.

55.    Defendant Irish Exit sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant Irish Exit, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant Irish Exit's autodialer disseminated information *en masse* to Plaintiff and other consumers.

56.    By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Irish Exit Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant Irish Exit violated 47 U.S.C. § 227(b)(1)(A)(iii).

57.    Defendant Irish Exit has therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant Irish Exit's conduct, Plaintiff and the other members of the Autodialed No Consent Irish Exit Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each

violation of such act.

58.    In the event that the Court determines that Defendant Irish Exit's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Irish Exit Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aubrey Markson, on behalf of herself and the Classes, prays for the following relief:

1.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Markson as the representative of the Classes and appointing her attorneys' as Class Counsel;

2.    An award of actual and statutory damages to be paid into a common fund for the benefit of the Classes;

3.    An injunction requiring Defendants to cease all wireless spam activities, and otherwise protecting the interests of the Classes;

4.    An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, to honor stop requests, and to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

5.      A declaratory judgment declaring that Defendants' calls violated the TCPA, that Defendants' equipment constitutes an ATDS under the TCPA, and that Defendants failed to obtain prior express written consent to call Plaintiff and the Classes;

6.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

7.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**AUBREY MARKSON**, individually and on behalf of all others similarly situated,

Dated: March 29, 2017          By:  __/s/Stefan Coleman__
                                One of Plaintiff's attorneys

Stefan Coleman*
Law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
5 Penn Plaza, 23rd floor
New York, New York 10001
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*
*\*pro hac vice* admission to be filed